J-S40044-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: TERMINATION OF PARENTAL RIGHTS H.L.H. AND D.A.C., AS TO THE MINOR CHILD K.Z.D. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.A.C., FATHER | : : : | |
| | : | No. 564 WDA 2019 |

Appeal from the Decree Entered March 19, 2019
In the Court of Common Pleas of Elk County Orphans' Court at No(s):
No. 3 of 2018

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                FILED SEPTEMBER 11, 2019

The Appellant, D.A.C. (Father), seeks review of the decree entered in the Court of Common Pleas of Elk County Orphans' Court (orphans' court), granting the petition of Elk County Children and Youth Services (CYS) and involuntarily terminating Father's parental rights to his minor son, K.Z.D. (born November 2014) (Child).[1]  We affirm.

I.

We derive the following relevant facts and procedural history of this case from our independent review of the certified record.  By order dated August

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The court also involuntarily terminated the parental rights of Child's mother, H.H. (Mother).  Mother did not file an appeal from the decree terminating her parental rights and has not participated in this appeal.

4, 2016, for reasons that are not entirely clear from the record but appear to be related to health concerns regarding Child, including an infected dog bite, Child was adjudicated dependent. The Mother retained legal and physical custody of Child but the order required CYS to provide protective supervision for Child. At that time, Father had not been located. Pursuant to a shelter care order dated September 12, 2016, Child was removed from Mother's care. On September 26, 2016, the court entered a dispositional order placing legal and physical custody of Child with CYS.

At a permanency review hearing on February 17, 2017, it was noted that Father was incarcerated at SCI-Albion and had only recently contacted CYS. The court ordered Father to complete a mental health and drug and alcohol assessment; attend parenting classes; obtain and maintain stable housing; demonstrate an ability to care for Child; complete a bonding assessment; and follow the rules of his parole upon his discharge from SCI-Albion. Id. at 8. Thereafter, Father was released from prison and made moderate progress towards reunification. N.T., 11/29/18, at 13-16. However, in October 2017, Father relapsed and entered an inpatient rehabilitation program. Id. at 17. Father was discharged in December 2017. Id. Father had stopped communicating with Child starting in October 2017 and did not resume contact after his discharge. Id.

On January 25, 2018, CYS filed a petition to involuntarily terminate Father's and Mother's parental rights to Child.[2] An evidentiary hearing on the petition was held on November 29, 2018.[3] At the hearing, the orphans' court heard the testimony of Clarissa Herzing (a CYS caseworker); Z.J.L. (Child's foster parent); and Jennifer Quiggle and Sarah Grunthaner (employees of Cameron and Elk County Behavioral and Developmental Programs who provided services to Mother). Father and Mother were present for the hearing. However, neither testified.

The orphans' court entered a decree on March 20, 2019, granting CYS's petition and involuntarily terminating Father's parental rights to Child. Father timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On appeal, Father contends that the orphans' court improperly terminated his parental rights pursuant to 23 Pa.C.S. § 2511(a) and (b).

_____

[2] On July 13, 2018, the court entered an order changing Child's permanent placement goal to adoption. N.T., 11/29/18, at 19.

[3] Prior to the hearing, the court entered an order appointing Attorney Thomas Coppolo to represent the interests of Child. See In re Adoption of L.B.M., 161 A.3d 172, 174-75, 180 (Pa. 2017) (pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests).

II.

A.

We review Father's claims in accordance with the following standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights. See 23 Pa.C.S. § 2511. It requires a bifurcated analysis.

> . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The orphans' court found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), as well as (b). Instantly, we conclude that the certified record supports the decree pursuant to Section 2511(a)(2) and (b), which provides as follows.

> (a) General Rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> (b) Other considerations. The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b); see also In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc) (stating that we need only agree with the trial court

as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm).[4]

B.

In a termination proceeding, we have explained that the moving party must produce clear and convincing evidence with respect to the following elements to terminate parental rights pursuant to Section 2511(a)(2): (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003).

Pursuant to Section 2511(a)(2), parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. In re A.L.D., 797 A.2d 326, 340 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. Id. Further, the grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity that cannot be remedied

_____

[4] Based on this disposition, we need not consider 23 Pa.C.S. § 2511(a)(1), (5), and (8).

are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. Id. at 337.

With respect to incarcerated parents, our Supreme Court has held that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control, or subsistence." In re Adoption of S.P., 47 A.3d 817, 830 (Pa. 2012) (citation and internal quotation marks omitted).

Father argues that the orphans' court erred in terminating his parental rights pursuant to Section 2511(a)(2) as he has demonstrated he can remedy his parenting issues. Father's brief at 21. Father contends that he met his court-ordered directives and made substantial progress. Id. at 22.

The orphans' court summarized its findings with respect to Section 2511(a)(2) as follows:

> The repeated and continued neglect and refusal to parent by [M]other and [F]ather has caused [Child] to be without essential parental care, control or subsistence necessary for his physical and mental well-being. . . . While [F]ather initially sought contact with [Child] in his placement through []CYS upon [F]ather's release from S.C.I.-Albion, this contact had deteriorated to no contact. . . . Following [F]ather's relapse, he attended a 28-day rehabilitation program. After completion of the program, [F]ather failed to take affirmative steps to reestablish contact with [Child]. Father's lack of communication may have been compounded by his incarceration at S.C.I.-Forest, Marienville, Pennsylvania, but the [c]ourt is well satisfied that the evidence presented on behalf of []CYS supports the finding that [F]ather's repeated and continued incapacity has caused [Child] to be without essential parental care, control, or subsistence necessary for his physical and mental well-being and the

conditions and causes of that incapacity cannot or will not be remedied by [F]ather within any reasonable time as [F]ather remains incarcerated. Therefore, []CYS is found to have met its burden under 23 Pa.C.S.A. § 2511(a)(2).

Orphans' Court Opinion, 3/20/19, at 10-11.

The record supports the orphans' court's conclusion. Ms. Herzing testified that Father was located in February 2017, and after his release from prison, initially made moderate progress towards reunification. N.T., 11/29/18, at 14-15, 33. She further testified that Father attended drug and alcohol treatment, obtained full-time employment, and visited Child. Id. at 15. Father's interactions with Child were positive and Father demonstrated good parenting skills. Id. at 35. CYS was hopeful that Father and Child would develop the type of relationship that would allow Child to be placed with Father. Id. at 40. However, in October 2017, Father relapsed and stopped communicating with Child. Id. at 17. After his release from an inpatient rehabilitation program in December 2017, Father never made contact with Child. Id. at 17-18. He was then incarcerated in February 2018. Id. At the time of the termination hearing, Father was incarcerated at SCI-Forest as a result of new criminal charges. Id. at 8-9.

Based on the above, we discern no abuse of discretion by the orphans' court in terminating Father's parental rights pursuant to Section 2511(a)(2). The evidence demonstrates that Father's repeated and continued incapacity or refusal to even contact Child, let alone parent, causing Child to be without essential parental care, control or subsistence necessary for his physical or

mental well-being. Further, the evidence demonstrates that Father's incapacity or refusal cannot or will not be remedied.

C.

With respect to Section 2511(b), we consider whether termination of parental rights will best serve Child's developmental, physical and emotional needs and welfare. See In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." Id. "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." In re B.N.M., 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

It is sufficient for the orphans' court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. In re Z.P., supra at 1121. The orphans' court may consider intangibles, such as the love, comfort, security and stability the child might have with the foster parent. See In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011). Our Supreme Court has stated, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with

their foster parents." In re T.S.M., supra at 268. The Court directed that in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." Id. at 269. The T.S.M. Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." Id. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." In re K.Z.S., 946 A.2d 753, 762-763 (Pa. Super. 2008).

With respect to Section 2511(b), Father asserts that the court improperly relied upon a bonding analysis by Dr. Allen Ryen, who "simply noted that Father was not present, and it did not appear that Father had been an active or even available part of the child's life, and it would be unlikely to develop a stable bond with the child."[5] Father's brief at 30-31. Father contends that the caseworker and the foster parent both testified to a positive bond between Father and Child. Id. Father argues that the bond between himself and Child was a positive one, and that severing the bond would be detrimental to Child. Id. at 31.

The orphans' court determined that terminating Father's parental rights best met Child's needs and welfare pursuant to Section 2511(b), reasoning,

_____

[5] Although Dr. Ryen's deposition transcript and report were admitted as exhibits at the hearing, neither appears in the certified record.

> [Child] has been in kinship or foster care since before his second birthday. Maternal aunt and uncle's family is able to provide him with the stable home that he needs in order to thrive. Being in kinship care has provided [Child] with the support, consistency, and treatment needed to address his reactive attachment disorder diagnosis, his speech issues, and the fear about security [Child] exhibits at night or when someone leaves the house. There is no evidence of any existing, reciprocal, necessary, and beneficial relationship between [Child] and his parents, let alone any secure and healthy bond. Therefore, the termination of the parental rights of Mother and [F]ather will best serve [Child]'s needs and welfare and will not sever an existing beneficial relationship or result in irreparable harm to [Child]. This [c]ourt finds that the elements of 23 Pa.C.S.A. § 2511(a)(5) and (8) relating to termination as being in the child's best interest in serving the needs and welfare of [Child] as well as the entirety of 23 Pa.C.S.A. § 2511(b) have been proven by []CYS by clear and convincing evidence.

Orphans' Court Opinion, 3/20/19, at 12-13.

The record again supports the court's determination. Child has resided with his maternal aunt and uncle for more than half of his life. N.T., 11/29/18, at 45. Child's speech is delayed and Child has been diagnosed with reactive attachment disorder. Id. at 19-20, 45, 50. Child's foster parents have assisted him with these issues and have placed Child in trauma therapy. Id. at 20, 45. Child is happy in the foster parents' home and refers to his foster parents as "mom" and "dad." Id. at 45. Further, Child's foster parents are an adoptive resource for Child. Id. at 20. While there was testimony that visits with Father went well and demonstrated a bond, Father had not seen four-year-old Child in more than a year at the time of the termination hearing. Id. at 17-18, 35, 51-53.

The orphans' court appropriately considered the status of a bond between Child and Father, as well as Child's need for safety and stability, and determined that termination of Father's parental rights best met Child's needs and welfare.  After careful review, the record supports the orphans' court's decision, and we do not discern an error of law or abuse of discretion.  Accordingly, we affirm the decree involuntarily terminating Father's parental rights.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2019